DOWD, WARDEN *v.* SIMS.

[No. 28,617. Filed December 15, 1950.]

56

J. *Emmett McManamon*, Attorney General; *Charles F. O'Connor* and *Merl M. Wall*, Deputy Attorneys General, for appellant.

*James C. Cooper*, Public Defender of Indiana, for appellee.

EMMERT, J.—This was an action instituted by the appellee, hereafter at times referred to as the prisoner, then an inmate of the Indiana State Prison, against the appellant, as Warden of the said Prison, for a writ of habeas corpus. The court gave judgment in favor of the appellee and ordered his release from the Indiana State Prison. The motion for the new trial being overruled, the appellant has taken this appeal.

An examination of the record reveals that on April 10, 1941, appellee was sentenced to the Indiana State Prison for a determinate period of 10 years for the offense of burglary in the first degree. On June 30, 1944, he received his release from the Indiana State Prison through Executive Order No. 17480 issued by Governor Henry F. Schricker, as follows:

"Whereas, one William[1] Sims was convicted in the Criminal Court of Lake County, Indiana on April 10, 1941 charged with 1st degree burglary

---

[1] The record discloses appellee was also known by the name of William Sims although the state failed to so designate him in its assignment of errors.

and sentenced and committed to the Indiana State prison for a term of 10 years; and

"Whereas, recommendations have been presented sufficient to indicate stability and that the ends of justice can best be served by his release;

"NOW THEREFORE, I, Henry F. Schricker, Governor of the State of Indiana, by virtue of the power and authority vested in me by the Constitution and laws of said State, hereby grant the said William Sims a parole subject to the following conditions: in the event the said Sims is accepted by the Selective Service for the Armed Forces his civil custody is hereby suspended; otherwise, in the event the said Sims is rejected by the Selective Service he is to report immediately to the Department of Public Welfare for the purpose of affecting permanent parole plans and is to remain on parole until the expiration of his maximum sentence or until authorized for discharge. This parole may be revoked at any time the good of the prisoner and the interests of society so warrant. . . ."

The appellee was inducted into the Army of the United States on July 3, 1944, serving therein until October 18, 1944, at which time he received an honorable medical discharge by reason of his having received a broken vertebra in the line of duty. Thereafter he went to the State of Alabama where he was arrested and recommitted to Kilby Prison to serve the remaining term of a county farm sentence imposed upon him in January, 1938, and from which he escaped in March, 1938. On May 17, 1946, he was ordered to return to Gary, Indiana, which he did August 26, 1946, going to work at the tin mills in Gary. On November 14, 1946, the appellee was charged in the Lake County Criminal Court with a felony; later the charges were dismissed. On December 18, 1946, Governor Ralph F. Gates, on motion of the State Department of Public Welfare, revoked his parole. On December 8, 1948, a Warden's warrant was issued for appellee's arrest, and

on December 18, 1948, the Board of Trustees of the prison declared appellee delinquent and a fugitive from justice. The appellee was returned to the said prison on March 2, 1949. At the time the warden's warrant was issued, six years and eight months of the determinate sentence of ten years had elapsed, and the record shows appellee had not been deprived of any of his good time by the Board of Trustees of the institution prior to the issuance of the said warrant, but the Board ordered him deprived of two years and two months and fourteen days good time for the supposed parole violation.

After the evidence had been heard the trial court made a finding for the petitioner, that he was unlawfully restrained of his liberty by the Warden of the Indiana State Prison, and that appellee ought to be released from said restraint. The judgment of the court followed the finding and ordered his discharge. The reasoning the trial judge may have used for his decision as well as his oral statement about the case are no part of the record here, and if on any theory his decision was correct, the judgment should be affirmed.

The record does not disclose when the offense was committed, but we must presume that the offense was charged to have been committed prior to the time of his conviction. At that time burglary in the first degree under Ch. 212 of the 1935 Acts was punishable by imprisonment "for any determinate period not less than ten years and not more than twenty years," in addition to a fine and disfranchisement. Chapter 164 of the 1933 Acts, § 13-116, Burns' 1933, was in effect, which provided that for a sentence of ten years the prisoner, by good conduct, could earn three years and four months of good time diminution, which would make his sen-

tence expire six years and eight months after judgment of conviction.

It is the warden's position in this appeal that the prisoner's sentence had not expired due to the fact that he had been released from prison pursuant to a Governor's Parole.

Section 1(a) of Ch. 85 of the 1947 Acts, § 13-116a, Burns' 1942 Replacement (1949 Supp.), provided that the diminution of sentence could not be earned while a prisoner serving a determinate sentence had been released on parole. This act became effective as an emergency law on March 6, 1947.

Undoubtedly one of the purposes of Ch. 85 of the 1947 Acts, § 13-116, Burns' 1942 Replacement (1949 Supp.), was to avoid the effect of *Boyd* v. *Howard, Warden* (1946), 224 Ind. 439, 68 N. E. 2d 652,[2] which held that the good time statute for determinate sentences was not limited to providing for diminution of sentence while the prisoner was in confinement in an institution, and that a prisoner on parole was entitled to good time provided by Ch. 164 of the 1933 Acts, § 13-116, Burns' 1933. The court, in construing the statute said:

> "There is no good reason why one who is out on parole should not be permitted to earn 'good time' and thus shorten the period of time between the sentence and the final discharge. The statute is aimed to promote good behavior and should be applicable to both the one in prison and the one on parole. Neither is free to follow his own particular inclinations in travel or other matters. The one on parole merely had a greater degree of freedom, but he is not in the same category as a person not under conviction and sentence." (P. 442.)

[2] This case without saying so reversed *Woodward* v. *Murdock* (1890), 124 Ind. 439, 24 N. E. 1047, as to its holding that a prisoner "could not earn good time when away from the prison."

However, it is clear that as to the appellee Sims, § 1(a) of Ch. 85 of the 1947 Acts, § 13-116a, Burns' 1942 Replacement (1949 Supp.), is invalid since ▆▆ it does not mitigate but increases his punishment. Legislation which by its terms deprives a convicted prisoner of his good time is *ex post facto* and in violation of § 24 of Article 1 of the Constitution of Indiana, and Clause 3 of § 9 of Article 1 of the Constitution of the United States. *State of Kansas* v. *John Tyree* (1904), 70 Kan. 203, 78 Pac. 525; *Murphy* v. *Commonwealth* (1899), 172 Mass. 264, 52 N. E. 505; *In the Matter of Charles Canfield on Habeas Corpus* (1894), 98 Mich. 644, 57 N. W. 807; *People ex rel. Adams* v. *Johnson, Warden* (1904), 44 Misc. 550, 90 N. Y. S. 134; 12 C. J. 1103, § 810. The good time law then in effect at the time the offense was committed "enters into the judgment as if written therein." *Woodward* v. *Murdock* (1890), 124 Ind. 439, 444, 24 N. E. 1047, *supra*.[3]

Chapter 117 of the 1933 Acts, which creates a State Commission on Clemency, § 13-1301, et seq., Burns' 1942 Replacement, by § 4 thereof, § 13-1304, ▆▆ Burns' 1942 Replacement, made it the duty of the State Commission on Clemency "to examine carefully and thoroughly into the merits of every petition which may be presented to the governor for the pardon or parole, other than the temporary parole, of any person who shall have been convicted by any court of this state, and to report to the governor, in writing, its conclusions and recommendations in

---

[3] See *State ex rel. Reed* v. *Howard, Warden* (1946), 224 Ind. 515, 69 N. E. 2d 172, which holds that § 52-1104, Burns' 1946 Replacement, on the right to transfer the prisoner from one institution to another is by implication of law a part of the judgment.

each such case. . . . ." The commission is a statutory body, and as such its only authority is that granted by the statute. *Chicago & E. I. R. Co.* v. *Public Service Comm.* (1943), 221 Ind. 592, 49 N. E. 2d 341. The statute does not give to the commission nor to the governor any power to deprive a prisoner of good time under the good time law. The good time statute in case of doubt must be construed in favor of the prisoner. *Dowd, Warden* v. *Johnson* (1943), 221 Ind. 398, 47 N. E. 2d 976; *Boyd* v. *Howard, Warden* (1946), 224 Ind. 439, 68 N. E. 2d 652, *supra.* Section 2 of Ch. 164 of the 1933 Acts, § 13-117, Burns' 1933 (the good time law), provides that "the warden or superintendent of such institution, by and with the consent and authority of the board of trustees thereof, shall have the power to deprive such inmate of any portion or all of the good time gained."[4] In this case there was no attempt made to follow the statutory requirements to deprive the prisoner of good time before his sentence, as modified by the good time law, had expired by operation of law. Therefore the action of the warden and the board of trustees of the Indiana State Prison was a nullity. Nor did the governor's execution of the document purporting to be a revocation of parole deprive him of good time, since the governor had no statutory authority to deprive him of good time.

Therefore, it becomes unnecessary to determine the warden's contention that the document executed by the governor purporting to be a parole was in fact a parole which he was authorized by the Constitution to issue, or the prisoner's contention that the document was in fact a conditional pardon which had been fully

---

[4] Section 13-117, Burns' 1942 Replacement (1949 Supp.), also provides that the warden or superintendent, with consent of the Board, deprives the prisoner of good time.

accepted by him, and therefore became an absolute pardon when the condition precedent was performed.

Judgment affirmed.

NOTE.—Reported in 95 N. E. 2d 628.