# Appeals of J. H. GOADBY MILLS, FRANKLIN THOMPSON, and HORATIO S. SHONNARD.

Docket Nos. 5211, 5212, 5213.   Submitted December 14, 1925.   Decided April 19, 1926.

An individual keeping his books upon a calendar-year basis and being a member of a partnership keeping its books upon a fiscal-year basis is required, under the provisions of section 218 (a) of the Revenue Act of 1918, to report as taxable income his proportion of the net profits of the partnership for its entire accounting period ending within his calendar year, notwithstanding a portion of such profits was received by him during the first six months of. the partnership's accounting period falling within his preceding calendar year.

*William D. Ritter, Esq.*, for the taxpayers.
*J. Arthur Adams, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

These appeals, which were consolidated and heard together, are from determinations by the Commissioner of deficiencies and overassessments as follows:

| | 1917, over-assessment. | 1918. | | 1919, deficiency. |
| --- | --- | --- | --- | --- |
| | | Deficiency | Overassessment. | |
| J. H. Goadby Mills | | · $69.81 | | $4,939.57 |
| Franklin Thompson | | | $348.38 | 3,155.08 |
| Horatio S. Shonnard | $2,063.24 | | 1,608.09 | 16,999.95 |

The issue concerns the question of whether the profits of a partnership for its fiscal year ending June 30 should be included in the income of the partners, who kept their accounts on the calendar-year basis, for the calendar year in which the accounting period of the partnership ended, when such profits were determined and distributed by the partnership monthly.

### FINDINGS OF FACT.

On June 30, 1917, these taxpayers formed a partnership under the firm name of Shonnard, Mills & Co. at New York City for the purpose of carrying on a general commission business in stocks, bonds, and commodities as a member of the New York Stock Exchange.

From June 30, 1917, to July 1, 1919, the partnership adopted as its annual accounting period the fiscal year ending June 30 and filed its tax returns accordingly, the first return embracing the fiscal

year ending June 30, 1918, and the second return embracing the fiscal year ending June 30, 1919. Shortly after the last-mentioned date the partnership applied to the Commissioner for permission to change its accounting period from a fiscal year to a calendar year and such permission was granted on March 2, 1920. The partnership, accordingly, within the time required by law, filed a return on the calendar year basis for the year 1919 embracing the period from the close of its fiscal year on June 30, 1919, to December 31, 1919. The members of the partnership adopted the calendar year as their annual accounting period and filed their tax returns accordingly for the years 1917, 1918, and 1919.

Throughout the period here in question, June 30, 1917, to December 31, 1919, the partnership balanced its books on the last day of each month and was enabled thereby to ascertain its profits or losses for each month. Immediately after the books were thus balanced it distributed and paid over to the individual partners, month by month, the monthly profits of the partnership. As a result there were actually distributed and paid over to the taxpayers, according to their respective interests, the following sums in each of the calendar years 1917, 1918, and 1919. The amount received in 1917 represented the distributions during the last six months of that year. The first amounts shown as having been received during 1918 and 1919 represent distributions during the first six months of those years and the second amounts represent distributions during the last six months of those years.

|  | 1917 | 1918 | 1919 |
|---|---|---|---|
| Mills | $5,515.93 | $8,781.03<br>9,524.50 | $31,027.78<br>37,372.71 |
| Thompson | 3,773.45 | 18,305.53<br>6,553.20<br>6,536.10 | 68,400.49<br>24,731.18<br>30,222.05 |
| Shonnard | 11,638.48 | 13,089.30<br>18,162.08<br>24,148.98 | 54,953.23<br>67,155.56<br>80,229.16 |
|  |  | 42,311.06 | 147,384.72 |

The distributions thus made, when computed according to the accounting period of the partnership, follow:

|  | 1918, fiscal year ending June 30. | 1919, fiscal year ending June 30. | 1919, second half calendar year. |
|---|---|---|---|
| Mills | $14,296.93 | $40,552.28 | $37,372.71 |
| Thompson | 10,326.65 | 31,267.28 | 30,222.05 |
| Shonnard | 29,800.56 | 91,304.54 | 80,229.16 |

Upon auditing the returns of the taxpayers for the calendar years 1917, 1918, and 1919, the Commissioner, proceeding on the theory that profits of a partnership having an accounting period different from that of the partners constitute income to the partners in the year in which the annual accounting period of the partnership ended within the annual accounting period of the partners, held that such distributions, the total of which throughout the accounting periods of the partnership corresponded with the net income of the partnership in such periods, should have been accounted for by them in their respective calendar year returns as follows:

|  | 1917. | 1918. | 1919. |
|---|---|---|---|
| Mills | None. | $14,296.93 | $40,552.28<br>37,372.71 |
| Thompson | None. | 10,326.65 | 77,924.09<br>31,267.28<br>30,225.05 |
| Shonnard | None. | 29,800.56 | 61,492.33<br>91,304.54<br>80,229.16<br>171,533.70 |

In the case of each taxpayer, the first amount appearing under 1919 represents the total distribution made by the partnership throughout its entire fiscal year ending June 30, 1919. The second amount represents total distributions made by the partnership throughout the last six months of 1919, when it changed to a calendar-year basis.

The Commissioner also held that in those years in which the tax rate of one calendar year differed from that of another the tax liability of the partners should, in respect of such partnership income, be determined by first ascertaining the net income of the partnership in each of its accounting periods and then apportioning such income to the calendar years of the individual partners according to the percentage which the number of months in each accounting period of the partnership bore to the twelve months in each of the calendar years; the result being that with respect to the partnership income in the fiscal year ending June 30, 1918, one half was apportioned to 1917 and subjected to 1917 rates, and the other half was apportioned to 1918 and subjected to 1918 rates; and, with respect to the partnership income in the fiscal year ending June 30, 1919, one half was apportioned to 1918 and subjected to 1918 rates, and the other half was apportioned to 1919 and subjected to 1919 rates. For the year 1919 the Commissioner held that the partners should report as income received in that year the whole amount of their respective shares of the partnership's income for

the 12-month period corresponding to the fiscal year of the partnership ending June 30, 1919, and for the 6-month period representing the last half of 1919 when the partnership changed to the calendar-year basis, or a total of 18 months.

OPINION.

LITTLETON: The partnership of which these taxpayers were members adopted as its accounting period from June 30, 1917, to July 1, 1919, a fiscal-year period ending June 30, 1918, and June 30, 1919. It changed to the calendar-year basis upon the close of its fiscal year on June 30, 1919. The partners were, at all times, on the calendar-year basis and rendered their returns on the cash receipts and disbursements basis. Section 213 of the Revenue Act of 1918 provides, after setting forth the items to be included in gross income, that "the amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period." Section 218 (a) provides:

> That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year, or, if his net income for such taxable year is computed upon the basis of a period different from that upon the basis of which the net income of the partnership is computed, then his distributive share of the net income of the partnership for any accounting period of the partnership ending within the fiscal or calendar year upon the basis of which the partner's net income is computed.

The taxpayers contend that, since the partnership balanced its books each month and paid over to them monthly the profits according to their respective interests, the amounts thus received constituted income to them in the year in which received for the reasons that (1) section 213 of the Revenue Act of 1918 provides that all items of income are to be included in gross income for the taxable year in which received and, unless an exception is read into section 218 (a), the income of a partnership formally distributed monthly should be accounted for by the partners in the year in which received; (2) in the case of personal service corporations, which are taxed in the same manner as partnerships, distributions are to be accounted for by the distributees in the year in which received; (3) section 224 of the Revenue Act of 1918 requires partnerships to make returns, stating specifically the items of gross income and deductions allowed, and to include therein the names and addresses of the individuals who would be entitled to share in the

net income if distributed and the amount of the distributive share of each partner; that the partnership is not required to report its distributions but only the undistributed income; (4) under section 221 partnerships having the control, receipt, custody, disposal, or payment of fixed or determinable annual or periodical gains, profits, and income, of any nonresident alien individual shall deduct and withhold from such annual or periodical gains, profits, and income a tax equal to 8 per cent thereof and shall make return thereof on or before March 1 of each year, and shall on or before June 15 pay the tax, and that income upon which any tax is required to be withheld at the source shall be included in the return of the recipient of such income, but any amount of tax so withheld shall be credited against the amount of income tax as computed in such return; (5) subsection (a) of section 218 of the Revenue Act of 1918 should not be construed so as to include within its provisions matters beyond the clear import of the language used and any doubt as to the provisions of that section should be resolved in favor of the taxpayer.

The Commissioner contends that section 218 (a) requires that the distributive share of the partners of the net income of the partnership for its accounting period ending within the fiscal or calendar year of the partners be included as income to the partners in the year in which the partnership's accounting period ends, regardless of when the income is actually distributed.

In the enactment of section 218 (a) Congress ignored for taxing purposes the existence of the partnership and framed the law so as to treat the gains and profits of the partnership as if they were gains and profits of the individual partners. Unlike a corporation, a partnership has no legal existence aside from the members who compose it; consequently, in order that the profits of the partnership might not escape taxation, Congress provided that its income should be taxed to the individual partners, the same as if they had received it direct without the intervention of the partnership.

When the accounting periods of the partners coincide with the accounting period of the partnership, the provisions of section 212 (b) and section 213 (a) govern the determination of income. The purpose of Congress in the enactment of section 218 (a) to the effect that each partner should include in his net income " his distributive share, whether distributed or not, of the net income of the partnership for the taxable year," to cover a situation already taken care of by the provisions of sections 212 (b) and 213 (a), was to make more evident its intent to ignore the partnership and treat its profits and earnings as accruing directly to the partners. The use of the phrase " whether distributed or not " evidences an intent on the part of Congress to levy the tax against the same income with respect to

which the tax would have been levied had the partnership been created a taxable entity and made liable for the tax instead of the partners in their individual capacities. And this is in consonance with the provisions of sections 212 (b) and 213 (a), for, if the partnership profits and earnings are to be treated as accruing directly to the partners, it is immaterial whether the earnings are distributed by the partnership or not, since the partnership, as an entity, is exempt from taxation but is recognized as an entity for the purposes of accounting and determining the net income upon which the tax is required to be paid by the partners in proportion to their respective interests therein.

In enacting the provisions of the second clause of the second sentence of section 218 (a), Congress gave recognition to the situation where the accounting periods of the partners do not coincide with that of the partnership, and it was necessary to specify the time as of which the partners should account for their distributive shares in the net income of the partnership. Had Congress failed to specify the time when a partner should account for his share of the net income of the partnership for its accounting period, the partners would have been required to account for their distributive shares of the partnership's net income in accordance with the provisions of section 213 (a), that is to say, their distributive shares would be included in their income for the taxable year in which received or in accordance with the provisions of section 212 (b), which require that "the net income shall be computed upon the basis of the taxpayer's annual accounting period," and which would require the partners to report as income their distributive shares in the partnership earnings for the 12 months coinciding with their accounting period.

Except for the provisions of section 218 (a), the only way in which the partners' distributive shares in the partnership earnings for the 12 months coinciding with their accounting periods could be determined under section 212 (b) would be by taking an allocable part of their distributive shares in the net income of the partnership for each of the partnership's two accounting periods overlapping theirs. A partner having a calendar year basis and filing his return on March 15, and being a member of a partnership having an accounting period ending on June 30, would be unable to determine his distributive share in the earnings of the partnership for one of the two partnership accounting periods overlapping his until more than three months after his return was due to be filed. Section 213 (a) would be equally inapplicable to such a situation. In recognizing a partnership for accounting purposes, Congress realized that until the close of the partnership's accounting period it can not be determined whether or not the partnership has any net

income.   The earnings of the earlier months may be entirely elimi-
nated by losses sustained in the closing months of the partnership's
accounting period, even to the extent of showing a net loss for the
entire accounting period.   Under such circumstances, it could not
be said that distributions during the first months of the partner-
ship's accounting period constitute income to the partners when the
operations of the entire accounting period show that the partnership
sustained a loss.

The language of section 218 (a) is unambiguous and its meaning
is readily apparent.   It states that the amount to be reported as
income by the partner in the case where the accounting period of the
partner differs from that of the partnership is his distributive share
of the net income of the partnership for any accounting period of
the partnership ending within the fiscal or calendar year upon the
basis of which the partner's net income is computed.   This language
conveys but one meaning, and that is that a partner must report as
income his proportion of the net income of the partnership for its
accounting period which Congress has recognized for 12 months end-
ing within his fiscal or calendar year.   Under the language of this
section it is immaterial when and how the partner's share of the net
income of the partnership is reduced to his possession.

Upon careful consideration of the taxpayers' contentions, the
Board is of the opinion that section 218 (a) provides an exception
to section 213 of the Revenue Act of 1918, and that the conclusion
reached is not inconsistent with the provisions of subsection (e) of
section 218, relating to personal service corporations, and subsec-
tion (b) of section 218 and subsection (c) of section 205 of the
Revenue Act of 1918, relating to the computation of tax upon the net
income of partnerships, or section 221, subsections (a) and (b) of
the Revenue Act of 1918, or section 224 of that Act.

*Orders of redetermination will be entered on 10 days' notice, under
Rule 50.*